# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR131 |
| | ) | |
| vs. | ) | ORDER |
| | ) | and |
| **SCOTT D. FREESE,** | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Scott D. Freese's (Freese) Motion to Sever (Filing No. 83) and Motion to Suppress (Filing No. 84). Freese is charged in the indictment with five other defendants for conspiracy to distribute 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 846. Three of Freese's co-defendants, Jesus Padilla (Padilla), Benjamin Sukup (Sukup), and Mollie Moler (Moler) have plead guilty, or have given notice of their intent to do so. Therefore, the motion to sever relates only to co-defendants Pablo Reza Landin (Landin) and Raul Jiminez (Jiminez). The court held an evidentiary hearing for Freese's motions on September 27, 2005. A transcript (TR.) was prepared and filed in this matter on October 6, 2005. **See** Filing No. 106. Although pre-hearing briefs were filed for both motions, no post-hearing briefs were filed.

## FINDINGS OF FACT

Freese and the government stipulated, for purposes of the pending motions, to the following facts:

1. Freese is an attorney licensed to practice law in the State of Nebraska.
2. Freese represented Padilla in numerous matters.
3. Freese represented Sukup.
4. Freese represented Sandy Lopez.
5. On or about February 28, 2005, Moler and Landin traveled to California from Nebraska.

6. This trip may or may not have involved arrangements for procuring controlled substances.

7. Padilla and Landin were involved in the distribution of methamphetamine obtained from various sources.

8. On or about March 3, 2005, Jiminez was stopped while traveling in a vehicle by Nebraska State Troopers in Madison County, Nebraska.

9. A search of the vehicle referred to in paragraph 8 resulted in the seizure of approximately 9.7 pounds of methamphetamine.

10. The government intends to offer evidence that the methamphetamine located within the vehicle referred to in paragraph 8 was intended for delivery to Landin and Padilla.

11. Following the arrest of Jiminez on March 3, 2005, Padilla contracted Freese and requested that Freese ascertain whether or not Jiminez had been arrested in Hall or Platte County, Nebraska.

12. Freese and Landin were both present on January 8, 2005, at Padilla's mechanic shop during the time a court-authorized video surveillance and oral communication device was discussed.

13. No court-authorized telephone conversations were intercepted between Freese and Landin.

14. No court-authorized telephone conversations were intercepted between Freese and Jiminez.

15. Numerous court-authorized telephone conversations were intercepted between Freese and Padilla.

16. The government intends to offer evidence that Freese provided information to co-conspirators regarding transporting currency derived or used to facilitate drug trafficking offenses.

**See** Exhibit 101; TR. 19.

Additionally, the court received Exhibit 102, a sealed exhibit, which is a listing of intercepted conversations between the defendants and others. Each has a brief description of the content of each conversation. Exhibit 103, a sealed exhibit, includes the transcripts of

a number of the intercepted conversations listed in Exhibit 102. The government objected to the admission of Exhibit 103 on the basis of relevance, which the court took under advisement. The court now overrules the relevance objection.

## ANALYSIS

### A.   Motion to Sever

When joinder is proper under the Federal Rules of Criminal Procedure, the court retains the discretion to sever defendants for purposes of trial under Rule 14. **See *United States v. Ruiz***, 412 F.3d 871, 886 (8th Cir. 2005). Rule 14 of the Federal Rules of Criminal Procedure provides in part:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Civ. P. 14(a).

There is a preference in the federal system for joint trials of defendants who are indicted together. ***Zafiro v. United States***, 506 U.S. 534, 537 (1993); ***United States v. Noe***, 411 F.3d 878, 886-87 (8th Cir. 2005); ***Flores***, 362 F.3d at 1039. Joint trials play a vital role in the criminal justice system. ***Zafiro***, 506 U.S. at 537. They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." ***Richardson v. Marsh***, 481 U.S. 200, 209-10 (1987). The Eighth Circuit has held "it is rarely improper for co-conspirators to be tried together." ***United States v. Evans***, 285 F.3d 664, 670 (8th Cir. 2002); **see *Noe***, 411 F.3d at 886-87. However, Fed. R. Crim. P. 14 reflects the recognition that joinder, even when proper under Rule 8(b), may prejudice a defendant. Consequently, if it appears a defendant may be prejudiced by a joinder either of the defendants or the counts for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The ***Zafiro*** Court concluded:

> [W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. . . . Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. **See *Bruton v. United States*,** 391 U.S. 123 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. . . . The risk of prejudice will vary with the facts in each case. . . . When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in ***Richardson v. Marsh***, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. **See** 481 U.S. at 211.

*Zafiro*, 506 U.S. at 539; **see also *United States v. Pou***, 953 F.2d 363, 368 (8th Cir. 1992). "Severance is not required simply because the evidence may have been more damaging against one [defendant] than the others. . . Severance does, however, become necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *Noe*, 411 F.3d at 886 (internal quotations and citations omitted).

### 1. Juror Confusion

The defendants may show prejudice requiring severance where "the jury will be unable to compartmentalize the evidence as it relates to separate defendants." ***United States v. Abfalter***, 340 F.3d 646, 652 (8th Cir. 2003) (citation omitted). In consideration of the jury's ability to compartmentalize the evidence against the joint defendants, the court considers the

complexity of the case. ***Pherigo***, 327 F.3d at 693. It is not necessary to sever the defendants "when evidence which is admissible only against some defendants may be damaging to others or when there is varying strength in the evidence against each defendant." ***United States v. Lee***, 374 F.3d 637, 646 (8th Cir. 2004) (internal citations omitted).

Freese argues he will be prejudiced by a joint trial with defendants Jiminez and Landin because the jury would be unable to distinguish association from participation. Further, Freese argues there is no evidence he had direct involvement with possession or distribution of methamphetamine, but, it is simply alleged Freese merely provided counsel to the co-defendants. Freese contends the overwhelming evidence, particularly a great number of telephone interceptions, implicates Jiminez and Landin. Specifically, Freese shows from the evidence (Exhibit 102) there are a number of intercepted communications the government intends to use against each of the defendants. From this list, there are only a few communications which overlap between Freese and the other two defendants. The government responds the evidence does show Freese participated in the conspiracy with the co-defendants by giving advice. Also, the government contends appropriate jury instructions would eliminate any prejudice to Freese.

Freese does not contend this case is unusually complex. Additionally, although there is different evidence against each defendant, most of the evidence is admissible against them all. During the hearing, evidence was presented to link the activities of each of the defendants and show the interrelationships of the separate individuals. The court notes, moreover, that cautionary instructions for the jury to give separate consideration to the evidence about each individual defendant should be sufficient in this case. **See *United States v. Ghant***, 339 F.3d 660, 666 (8th Cir. 2003); **see also *Zafiro***, 506 U.S. at 539  Despite the different facts affecting the involvement on the part of each of the defendants, the court believes that the jury will be able to compartmentalize the evidence against each of the defendants. **See *United States v. Kuenstler***, 325 F.3d 1015, 1024 (8th Cir. 2003). Therefore, the court concludes the motion to sever should be denied based on Freese's failure to show prejudice due to juror confusion.

### 2. Irreconcilable Defenses

A defendant can demonstrate real prejudice to his right to a fair trial by showing his defense is irreconcilable with that of a co-defendant. ***United States v. Nichols***, 416 F.3d 811, 816 (8th Cir. 2005). However, "[m]utually antagonistic defenses are not prejudicial per se." ***Zafiro***, 506 U.S. at 538.

> The Supreme Court specifically rejected the notion that defendants who have contradictory defenses are inherently prejudiced simply because "a jury will conclude [either] that both defendants are lying and convict them both on that basis, or that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt."

***Nichols***, 416 F.3d at 816 (**quoting *Zafiro***, 506 U.S. at 540).

Freese argues his defense is irreconcilable with the other defendants. Freese argues that he had no knowledge of a conspiracy and did not knowingly participate in any conspiracy. Freese contends the other defendants, Landin and Jiminez, would argue they were not involved in the conspiracy to the extent alleged by the government. Here, Freese has not shown his defense is contradictory to that of his co-defendants. Therefore, the court finds the co-defendants' defenses are reconcilable and no prejudice would be caused by a joint trial in this matter.

### B. Motion to Suppress

Freese argues that because he represented, as a licensed attorney, some of the individuals who, with Freese, were the subject of intercepted conversations, such conversations should be suppressed. Specifically, Freese seeks suppression of the conversations transcribed in Exhibit 103. Freese contends that although the attorney-client privilege belongs to the client, he is duty bound to protect the privileged conversations. The government disputes whether the attorney-client privilege applies to the intercepted conversations between Freese and his co-defendant clients. The government argues the privilege does not belong to Freese, thus Freese cannot assert the privilege to prevent disclosure in this case. Additionally, the government argues the communications were not

confidential communications in furtherance of the rendition of professional legal services. In the alternative, the government contends the crime/fraud exception to the privilege exception applies in this case.

The remedy of suppression is available for under Title III only if the conditions set forth in 18 U.S.C. § 2518(10)(a) are satisfied. ***United States v. Donovan***, 429 U.S. 413, 432 (1977). Each of these conditions involves the lawfulness of the interception itself.

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that--
> (I)   the communication was unlawfully intercepted;
> (ii)  the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a).

Freese's argument falls under the first ground. The obligation not to intercept non-criminal conversations is referred to in the law as the duty to minimize. The requirement of minimization is set forth in the statute which requires wire tap orders to include a provision that the interception shall "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C.A. § 2518(5) (2000).

Whether the officers complied with the required minimization depends upon "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time." ***Scott v. United States***, 436 U.S. 128, 136 (1978); **accord *United States v. Macklin***, 902 F.2d 1320, 1328 (8th Cir. 1990). Such an objective standard requires the reviewing court to view the interception from the perspective of the officer at the time he/she was monitoring the wire tap to determine objectively whether minimization occurred. When determining whether the government's surveillance was reasonable, "a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of the call, the extent of judicial supervision, length and origin of a

call, any use of coded or ambiguous language." *Macklin*, 902 F.2d at 1328; **accord** *United States v. Garcia*, 785 F.2d 214, 224 (8th Cir. 1986).

While there is no requirement that minimization be accomplished by a specific procedure, there are generally accepted techniques. "Courts have approved a number of procedures which can and should be used to achieve minimization. Among these are pre-search guidelines, special instructions, mid-search supervision, and monitoring procedures intended to reduce the interception of unrelated calls while enabling the surveillance to fulfill its purposes." James G. Carr, *The Law of Electronic Surveillance*, § 5:18 at 5-39 (Release #3, 8/2005).

As a general rule, courts are more tolerant of extensive surveillance in conspiracy cases, particularly narcotics conspiracies. *United States v. Fregoso*, 60 F.3d 1314, 1322 (8th Cir. 1995); *United States v. O'Connell*, 841 F.2d 1408, 1417 (8th Cir. 1988). Similarly, less effort to minimize is necessary with regard to conversations between known co-conspirators. **See** *Scott*, 436 U.S. at 140 ("And it is possible that many more of the conversations will be permissibly intercepted because they will involve one or more of the co-conspirators."); *United States v. Ozar*, 50 F.3d 1440, 1447-48 (8th Cir. 1995). More extensive monitoring is reasonable when conversations are in coded language and speakers use the jargon of the drug trade. *United States v. Williams*, 109 F.3d 502, 507 (8th Cir. 1996).

Extensive monitoring has been allowed at the beginning of the wire tap when investigators are attempting to identify speakers and ascertain patterns of use and users. *Padilla-Pena*, 129 F.3d at 463-64; *United States v. Willis*, 890 F.2d 1099, 1102 (10th Cir. 1989); **see** *Scott*, 436 U.S. at 141. The mechanics of logging the call, determining speaker identity, and assessing pertinence have generally been held to require full interception up to two minutes. Carr, *The Law of Electronic Surveillance* at 5-44. The commonly used two-minute standard is not absolute, and courts occasionally allow longer periods of uninterrupted interception. *United States v. Hinton*, 543 F.2d 1002, 1012 (2d Cir. 1976) (five minute period of interception was justified). Conversely, officers are not found to have failed their duty to minimize when calls are very short in duration. "In [such] calls, listening

agents barely had ample time to determine whether the speakers were named interceptees before the calls terminated." **Williams**, 109 F.3d at 507.  Finally, the minimization requirements do not require the elimination of interceptions of non-pertinent interceptions altogether.  **See Scott**, 436 U.S. at 140.

Even assuming, *arguendo*, that a particular conversation was not sufficiently minimized and intercepted, in the absence of a pervasive and flagrant disregard of minimization standards, such interception does not serve as a basis for wholesale suppression of other interceptions properly intercepted pursuant to the intercept order.  **Ozar**, 50 F.3d at 1448 (**quoting United State v. Cox**, 462 F.2d 1293, 1301-02 (8th Cir. 1972) ("Clearly Congress did not intend that evidence directly within the ambit of a lawful order should be suppressed because the officers, while awaiting the incriminating evidence, also gathered extraneous conversations.").  This means that "[t]he government is held to a standard of honest effort; perfection is usually not attainable, and is certainly not legally required."  **United States v. Uribe**, 890 F.2d 554, 557 (1st Cir. 1989); **see Ozar**, 50 F.3d at 1448 (noting bad faith requirement for suppression).

Here Freese argues only that the interceptions relate to privileged communications because they were between an attorney and his client.  However, communications between attorney and client are not *per se* privileged.  For example, the "crime-fraud" exception provides that the attorney-client privilege "'does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.'"  **In re BankAmerica Corp. Sec. Litig.**, 270 F.3d 639, 641 (8th Cir. 2001) (**quoting United States v. Zolin**, 491 U.S. 554, 563 (1989)).

For the most part, Freese failed to prove that each conversation was attorney-client privileged, and he also failed to prove bad faith interception of privileged communications. Such privileged communication is a "confidential communication made for the purpose of facilitating the rendition of professional legal services to the client."  Rule 503(b) (Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183, 235-36 (1972)). Alternatively, the privilege applies when "the communication was made for the purpose of securing legal advice."  **See In re Bieter Co.**, 16 F.3d 929, 935 (8th Cir. 1994) (discussing

9

the federal common law of attorney-client privilege). This court disagrees with Freese's assertion that the mere attempt to schedule a meeting is, itself, subject to the privilege. Further, a review of the transcripts reveals the co-defendants discussing servicing a vehicle and other personal matters unrelated to legal representation.

Finally, many of the calls were too short to minimize. Other calls contained personal conversation interspersed with parts of conversations which could be construed as code, or identifying the movement or the travel or activity of the conspirators. **See** *O'Connell*, 841 F.2d at 1417. Therefore, the court finds there is no factual basis to support the motion to suppress on the basis that law enforcement failed to minimize intercepted conversations, or that such conversations were privileged. Upon consideration,

**IT IS ORDERED:**

Scott D. Freese's Motion to Sever (Filing No. 83) is denied.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Scott D. Freese's Motion to Suppress (Filing No. 84) be denied.

**ADMONITION**

Pursuant to NECrimR 57.2 and 57.3 any appeal of this Order or objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Order and Report and Recommendation. Failure to timely appeal or object may constitute a waiver of any appeal or objection. The brief in support of any appeal or objection shall be filed at the time of filing such appeal or objection. Failure to file a brief in support of any appeal or objection may be deemed an abandonment of the appeal or objection.

DATED this 9th day of November, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge